Case 2:22-00506-JRM-36c  Doc 09/29/22-2  Entered 09/29/22 14:52:15  Desc Main
Case 22-00050-jdl   Doc 36   Filed 11/29/22   Entered 11/29/22 14:52:15   Page 1 of 9
Document    Page 1 of 9

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

IN RE:

ISLAND INDUSTRIES, INC.                    Case No. 22-20380-jdl
                                           Chapter 11
                                           Subchapter V

      Debtor.

SIGMA CORP.
      Plaintiff,                   Adv. Pro. No. 22-00050-jdl

  v.

ISLAND INDUSTRIES, INC. AND R. GLENN
SANDERS,
      Defendants.

---

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

---

Island Industries, Inc. ("Debtor" or "Island") and R. Glenn Sanders ("Sanders") (together "Defendants"), file this reply to Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted (hereinafter "Sigma's Response"). [D.E. 24]. In support of the motion to dismiss, Defendants would state the following:

## LAW AND ARGUMENT

In the Sigma Response, Sigma attempts to cloud the issues before the Court by misstating Defendant's positions, misstating the facts, and ignoring the law. Defendants' positions are clearly outlined in their motion to dismiss; however, given Sigma's attempts to escape the conclusion that their claims are barred by basic legal principles, Defendants file this reply to draw the Court's attention to four key issues: 1) the Court may take judicial notice of the Record in the FCA Action,

2) Sigma's claims are based on two theories, both of which are barred, 3) there is no precedent for Sigma's unjust enrichment theory, and 4) Sigma's claims are without merit and were brought for an improper purpose.

> I. **THE COURT MAY TAKE JUDICIAL NOTICE OF THE RECORD IN THE FCA ACTION**

The records which Island asks the Court to take judicial notice support the conclusion that Sigma's Claim in this matter was a compulsory counterclaim which it was required to raise in the FCA Action. Recognizing this, Sigma asserts that the Court cannot take judicial notice of documents from the FCA Action. While conceding that courts may consider public records, [Sigma's Response ¶ 6], Sigma argues that the Court may not take judicial notice of records in other matters for the truth of the matter asserted in the records. [Sigma's Response ¶¶ 6-8.]

Sigma's suggestion that the Sixth Circuit only permits judicial notice of documents attached to the complaint is without merit. Sixth Circuit law is clear that judicial notice may be taken of documents not attached to the complaint or incorporated by reference if there are no material disputed issues as to the relevance of the document. *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (considering a contract, trial motions, a trial transcript, and a jury verdict without the need to convert a motion to dismiss to a motion for summary judgment); *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) (finding that review of state-court proceedings during a motion to dismiss was permitted and noting that "any federal court may take judicial notice of the proceedings in other courts of record") (citation omitted); *Burke v. Radiant Logistics Glob. Servs., Inc.*, No. 08-10581, 2008 WL 2094919, at *3 n.2 (E.D. Mich. May 16, 2008) ("[A] court does not exceed the permissible bounds of Rule 12(b)(6) by considering records and

orders from other judicial proceedings, particularly where the complaint itself makes reference to these other proceedings.") (citations omitted).

Sigma attempts to obfuscate the fact that their claim arises from the same nucleus of operative facts as the FCA Action. Sigma does not challenge the authenticity of any of the documents relied on by Defendants or the positions taken and statements made by it in the FCA Action. Defendants cite to the record in the FCA Action not to establish the truth of the matters asserted in that record, but, rather, to establish that issues and proof relating to Sigma's Chinese suppliers were raised in the FCA Action. This Court does not need to take the record in the FCA Action as true to determine what issues were raised in the FCA Action.

Sigma's assertion that this Court is being asked to accept the truth of the matters asserted in the FCA Action is without basis. By way of example, Defendants note that in its arguments before the jury in the FCA case, Sigma's attorney suggested that Island engaged in "dirty tricks" and asked the jury to consider whether it was ethical for Island to contact employees and former employees of competitors to get information to support this lawsuit. [Island Motion, D.E. 19-7, Ex. 7 at 119]. The testimony is offered to show that Sigma had notice of facts which it considered improper and which it attempted to raise defensively; not for the truth of any assertion that Island did anything that was improper. Instead, Defendants are asking the Court to take judicial notice of the record in the FCA Action because it clearly establishes that Sigma's claim in this matter should have been brough as a compulsory counterclaim and is thus barred by *res judicata*.

## II. SIGMA'S CLAIMS ARE BARRED

Despite Sigma's attempt to characterize their claim out as something more, Sigma's Complaint raises only two issues: (1) Defendants improperly used Sigma's trade secrets[1] to assert the claims in the FCA Action and (2) Island disclosed Sigma's trade secrets in the FCA Action in connection with pretrial discovery. Both of these issues should have been raised in the FCA Action.

If Island improperly used Sigma's trade secrets to assert claims in the FCA Action, then Sigma was required by Fed. R. Civ. P. 13(a)(1) to assert any claims arising out of such conduct in a compulsory counterclaim. To the extent Sigma claims it had a trade secret claim against Island related to bringing the FCA Action, then such claim necessarily existed when Island filed the FCA Complaint, thus it had to be raised as a compulsory counter claim. *See* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim. . . ."). Sigma attempts to obscure the issue by arguing that the FCA claim and the trade secret claim have different elements. But that is not the test in the Sixth Circuit. The test is whether a "logical relationship exists between the two claims" such that separate claims would "involve a substantial duplication of effort and time by the parties and the courts." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Amer., Inc.,* 292 F.3d 384, 390 (3rd Cir. 2002) (citation omitted); *Burch ex rel. U.S. v. Piqua Eng'g, Inc.*, 145 F.R.D. 452, 457 (S.D. Ohio 1992) (citing to *Ashbrook v. Block,* 917 F.2d 918, 923, 924 (6th Cir.1990); *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 382 (6th Cir. 1984)). The identity of Sigma's Chinese suppliers was directly at issue in the FCA Action as proving that is essential to establishing what

---

[1] For simplicity and ease of reading, Defendants will use the term "trade secrets" because that is what Sigma alleges in its Complaint; however, Defendants deny that the information Sigma identifies in the Complaint was ever a trade secret.

was imported and whether anti-dumping duties were due on Sigma's imports. The public records which Island asks this Court to take notice of demonstrate that Sigma raised questions of how Island came to know who its suppliers were in the FCA Action. Sigma's claim here will involve the same witnesses presenting the same evidence as in the FCA Action. Allowing Sigma a second bite at the apple is exactly what *res judicata* is meant to prevent.

Next, Sigma argues that res judicata does not attach because Island revealed its trade secrets in discovery of the FCA Action after the deadline to amend the pleadings and thus could not have raised the issue. This argument fails for two reasons. First, Sigma never attempted to raise the issue by seeking leave to amend the Rule 16(b) scheduling order to assert a counterclaim. As a threshold matter, the allegations of the FCA Complaint put Sigma on notice that Island had obtained information from Sigma's "then-purchasing agent" and from a "former Sigma employee, who was in a position to know. . . ." Thus, Sigma had knowledge of these allegations at the inception of the lawsuit and long before any deadline to file counterclaims. Sigma disingenuously argues that the FCA Court enforced the deadline to file counterclaims in an "identical scenario." This is simply false. The defendant Sigma refers to is Anvil International, LLC, and the reason the FCA Court denied Anvil's motion was because Anvil had been dismissed from the FCA Action. The order is attached to Sigma's Request for Judicial Notice as Ex. B. The order clearly states that the motion to amend is being denied as moot because Anvil had been dismissed. Sigma was never dismissed from the FCA Action. Sigma never sought permission to amend its answer or to amend the Rule 16(b) scheduling order. Because Sigma never filed a motion for leave to amend, there is no way to know how the FCA Court would have ruled. Sigma was never barred from asserting its counterclaim, and its assertions to the contrary are false. So, despite Sigma's assertions that the scenarios were identical, they were, in fact, quite distinct.

Second, and perhaps more egregious, Sigma's Complaint seeks to have this Court police behavior that occurred in the course of pre-trial discovery in a court in another district. Sigma admits that it did not move for contempt of the Protective Order in the FCA Action. [Sigma's Response ¶ 29.] Nor could it, since the Protective Order did not give a non-producing party any right to designate an opposing party's produced document as confidential. In fact, Sigma acknowledges that there was a dispute as to whether the discovery in the FCA Action was confidential and then admits that it took no action to have the FCA Court resolve that dispute. By doing so, Sigma allowed the documents to remain in the state in which Island produced them. If Sigma truly believed that documents should have been stamped confidential, then the appropriate course of action was to raise that issue with the FCA Court and for Sigma to take immediate action to protect its purported trade secret. Sigma is not allowed to sit back and wait for a judgment to be entered against it in the FCA Action and then file suit with another court asking the second court to punish its adversary for how it behaved during discovery of the FCA Action. From a policy perspective, allowing such behavior would result in an explosion of litigation. This is why Sigma is unable to cite to a single case where a Court has allowed a claim based on disclosures in discovery of an earlier matter.

Sigma's claims are clearly barred and should be dismissed with prejudice.

### III.    THERE IS NO PRECEDENT FOR SIGMA'S THEORY OF UNJUST ENRICHMENT

Sigma argues that it is entitled to damages because Defendants were unjustly enriched by the judgment rendered in the FCA Action. Sigma does not cite to a single case where a party was found liable in one court then sued their adversary in another court to recover the damages awarded in the first action. In fact, Sigma makes no effort to provide a legal justification for its position other than to state that it was "significantly harmed by the FCA Action." [Sigma's Response ¶ 39.]

The reason for this is simple, there are no cases that provide a legal basis for Sigma's unjust enrichment theory. If a party is found liable by a jury in a Federal District Court, that party's only recourse is to file an appeal. Sigma has exercised its right to appeal, and the Nineth Circuit will rule. Sigma cannot ask another court to award it damages based on the earlier judgment.

Under Sigma's unjust enrichment theory, a party need not raise a defense in the earlier matter. Instead, that party can simply take the case all the way to judgment, and if it loses, it can sue its adversary and assert its previously unraised defense in a subsequent lawsuit in an attempt to recover its losses in the prior lawsuit. This would create an incentive for parties to hold back in the original matter because they know they can seek an unjust enrichment judgment with another court. This strategy would undermine the very reason Rule 13 and *res judicata* exists. This is why there no cases allowing this to happen, because the rules are so clearly against the practice, that no reasonable party would attempt it.

**IV.    SIGMA'S CLAIM IS WITHOUT MERIT AND WAS FILED FOR AN IMPROPER PURPOSE**

In the Sixth Circuit, a party is entitled to its attorney's fees under 18 U.S.C. § 1836(b)(3)(D) when the "claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Aday v. Westfield Ins. Co.*, 2022 U.S. App. LEXIS 2319, at *41 (6th Cir. 2022). The claims advanced by Sigma are barred by doctrines fundamental to the American legal system. It is simply not credible for Sigma to claim that it was unaware of Rule 13 and *res judicata*. It is not credible for Sigma to claim that it was unaware that if a discovery dispute arises between parties, that the correct course of action is to file a motion in that matter, not to file a whole new lawsuit. Sigma and its counsel were aware when they filed the Complaint in this matter that their claims were without merit.

It is clear from Sigma's behavior that Sigma filed its Complaint for an improper purpose. Sigma's true motives are evidenced by its behavior since filing its Complaint. Since that point, Sigma has objected to Island hiring the attorneys of its choice, forcing Island to justify its decision with a written a response and at a hearing before the bankruptcy court. Sigma has continually argued that Island should spend all its cash reserves to pay another creditor in full so that Island would have no cash left to fund litigation against Sigma. Sigma has continually attempted to paint Island as a bad actor while Sigma was the party found liable for defrauding the U.S. Government out of millions of dollars. Sigma has objected to Island's attempts to ensure that all its creditors are paid in full from the judgment against Sigma by objecting to Island's plan to purchase a contingent risk insurance policy. In fact, Sigma has filed an objection to every motion Island has filed in its bankruptcy since Sigma has filed its Complaint. It is clear from Sigma's behavior that they have no desire to actually collect on their claim but merely to force Island to spend its resources (which are significantly less that Sigma's resources) and put Island's operations at risk.

While the Court may not consider Sigma's post-Complaint behavior for the purposes of deciding the motion to dismiss, the Court may consider it if the case is dismissed, as it should be, for the purposes of awarding attorney's fees under 18 U.S.C. § 1836(b)(3)(D). Considering that the totality of Sigma's behavior and the fact that its claims are utterly without merit, there can be no doubt that Defendants are entitled to their attorney's fees in this matter.

## CONCLUSION

WHEREFORE, Defendants pray that the Court dismiss Sigma's Complaint with prejudice for the reasons provided above, and award Defendants their reasonable attorneys' fees, and grant Defendants such relief as is consistent with their motion.

**GLANKLER BROWN, PLLC**

By: /s/ Michael P. Coury
Michael P. Coury (TN #7002)
Ricky L. Hutchens (TN #34750)
6000 Poplar Avenue, Suite 400
Memphis, TN  38119
(901) 525-1322
(901) 525-2389 – facsimile
mcoury@glankler.com

Attorneys for Island Industries, Inc.

BURCH, PORTER & JOHNSON, PLLC

/s/Douglas F. Halijan
Douglas F. Halijan (BPR # 016718)
130 North Court Avenue
Memphis, Tennessee 38103
Phone: (901) 524-5000
Fax: (901) 524-5024
dhalijan@bpjlaw.com

Attorneys for R. Glenn Sanders

CERTIFICATE OF SERVICE

I, Michael P. Coury, hereby certify that a true and correct copy of the foregoing electronically filed Reply was served on the parties who are registered CM/ECF participants who have consented to electronic notice, and the Notice of Electronic Filing indicates that notice was electronically mailed to said party this 29th day of September 2022:

Matrix

/s/ Michael P. Coury
Michael P. Coury

4891-9263-6213, v. 1