# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In Re:

ISLAND INDUSTRIES, INC.
                Debtor.

SIGMA CORPORATION,

            Plaintiff,

    v.

ISLAND INDUSTRIES, INC. and R. GLENN
SANDERS

            Defendants.

Case No: 22-20380-JDL

Chapter 11

Subchapter V

Adv. Proc. No: 22-00050-JDL

---

## SIGMA CORPORATION'S REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW ................................................................................... 2

LEGAL ARGUMENT .......................................................................................... 3

I.      The Exhibits Defendants Proffer as Extrinsic Evidence Should Be Disregarded ......... 3

II.     Sigma's Trade Secret Claims Are Not Barred By Res Judicata ................... 6

        A.      The Trade Secrets Claim Was Not a Compulsory Counterclaim ..................... 6

        B.      Counterclaims Were Barred By the District Court in the FCA Action ............. 7

III.    Defendants Fall Short of Demonstrating a Failure to State a Claim .......................... 10

        A.      Sigma's Supplier List Is a Trade Secret ........................................ 10

                1.      Sigma's Trade Secrets had Value at the Time of the
                        Misappropriation and Disclosure ...................................... 11

                2.      Whether the Trade Secrets Were Known Is a Disputed Fact ............. 12

        B.      Sigma Took Reasonable Measures to Protect its Trade Secrets ..................... 14

                1.      Sigma Sufficiently Alleged that it Kept its Information Secret .......... 14

                2.      The Protective Order Does Not Allow Defendants to Disclose
                        Sigma's Trade Secrets to its Competitors .......................... 16

        C.      Sigma Sufficiently Alleged that Defendants Intended to Injure Sigma ........... 17

        D.      Sigma Clearly Identified Remedies to Which it Is Entitled ........................ 19

                1.      The Loss of Secrecy and Benefit to its Competitors Harmed Sigma .. 19

                2.      Defendants Were Unjustly Enriched By the FCA Action ................. 21

IV.     Defendants Are Not Immune From Trade Secrets Liability ....................................... 22

V.      Defendants Are Not Entitled to Attorneys' Fees ....................................................... 24

CONCLUSION ................................................................................................... 26

ORAL ARGUMENT REQUEST ....................................................................... 26

Sigma Corporation ("**Sigma**") hereby files this reply in opposition (the "**Opposition**") to Defendants' motion to dismiss [Adv. D.I. 19] (the "**Motion**") Sigma's complaint [Adv. D.I. 1] (the "**Complaint**") that Island Industries, Inc. ("**Island**") and R. Glenn Sanders (together, the "**Defendants**") misappropriated Sigma's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("**DTSA**"), the New Jersey Trade Secrets Act, N.J. Stat. § 56.15-1, *et seq*. ("**NJTSA**"), and the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq*. ("**TUTSA**").  In support of the Opposition, Sigma respectfully states the following:

## INTRODUCTION

1.    Over the last few years, Sigma has faced repeated and exorbitant harm from Defendants' theft and disclosure of Sigma's trade secret information.  Consequently, Sigma filed a Complaint in this Court under federal and state statutes to recover damages relating to that theft and stop any continued disclosure by Island and Mr. Sanders.  In the Complaint, Sigma specifically described how Defendants, who are both Sigma's competitor and current supplier, stole its trade secrets from a former employee both before and after he worked at Sigma.  The Defendants then used those unlawfully-obtained trade secrets to bring a suit against Sigma under the False Claims Act ("**FCA Action**") and directly disclosed Sigma's trade secrets to its competitors and the public.

2.    Defendants' motion to dismiss, often relying on sweeping statements unsupported by authority, falls far short of showing that Sigma's extensive allegations were insufficient.  First, Defendants' argument that Sigma's claims are precluded ignores that the claims brought in this action are not the same or logically related to those brought in the FCA Action.  The claims brought by Island in the FCA Action concerned allegations that Sigma knowingly did not pay a tariff to the U.S. on welded outlets imported from China.  The claims brought in the Complaint concern Defendants' theft of Sigma's trade secrets.  The two actions concern different legal elements, involving different acts, and different evidence, during different time periods.  Moreover, even if

1

Sigma was required to bring its theft of trade secrets claims in the FCA Action—it was not—it could not have because by the time Defendants disclosed their misappropriation, Sigma was barred from asserting a counterclaim. The District Court in the FCA Action ("**FCA Court**") made this clear in an order issued shortly after Sigma became aware of the misappropriation when it refused to allow an amendment to bring a similar claim against Island. Second, Defendants make a series of arguments about the sufficiency of Sigma's allegations, but Defendants' arguments are contradicted by law and are based on cherry-picked allegations and improperly submitted "evidence" that cannot be considered at the pleading stage. Sigma has specifically alleged all elements required to state a trade secrets theft claim under each statute. Finally, Defendants' attempt to claim immunity under the DTSA is barred by the plain language of the statute and Defendants disclosure of Sigma's trade secrets to its competitors in discovery. The Motion should be denied.

## STANDARD OF REVIEW

3.     On a motion to dismiss, the Court "must review the complaint in the light most favorable to Plaintiffs, accept their factual allegations as true, and determine whether Plaintiffs undoubtedly can prove no set of facts in support of [their] claims that would entitle [them] to relief." *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011) (quotation omitted). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

4.     The Sixth Circuit has recognized that the "standard for Rule 12(b)(6) dismissals is quite liberal," though "more than bare assertions of legal conclusions is ordinarily required to

satisfy federal notice pleading requirements." *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 597 (6th Cir. 2014) (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556 (quotation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## LEGAL ARGUMENT

### I.     The Exhibits Defendants Proffer as Extrinsic Evidence Should Be Disregarded

5.     As an initial matter, Defendants attached and refer to pleadings and trial transcripts from the FCA Action to dispute certain of the allegations made in the Complaint. Such exhibits may not be considered at the motion to dismiss stage. Defendants' attempt to dispute facts that must be taken as true at this stage of the litigation demonstrates that the Complaint states a claim on which relief should be granted.

6.     Generally, courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). A court "may consider public records" in some circumstances, such as "developments in related 'proceedings in other courts of record.'" *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2021) (citations omitted). But courts should not take judicial notice of documents contained in an earlier proceeding for the truth of matters subject to reasonable dispute. *Stafford v. Jewelers Mut. Ins.*, 554 Fed. Appx. 360, 369 (6th Cir. 2014). Rather, the use of documents filed in other proceedings "is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa v. City of*

*Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005) (citations omitted).  Here, Sigma attaches

court orders from the FCA Action as exhibits to its accompanying Request for Judicial Notice

("**RJN**").  Sigma only requests that the Court take judicial notice of what the U.S. District Court

for the Central District of California itself stated, which is beyond dispute.

7.      Defendants, in contrast, cite to selected trial evidence and excerpts of trial

testimony in an improper attempt to dispute facts alleged in the Complaint that must be accepted

as true at the pleading stage.  It is well-established that Defendants' Exhibits 2 (Sigma's motion to

dismiss the FCA Action), 5 (confidential import documentation), and 6 and 7 (trial transcripts)

may not be considered at this stage.  *See Hurd v. District of Columbia, Government*, 864 F.3d 671,

687 (D.C. Cir. 2017) (holding that the court could not take judicial notice of court records from

other cases and rely on them "for the truth of the matter asserted" to rebut facts adequately stated

in an opposing party's complaint at the motion to dismiss stage).  As the Ninth Circuit explained:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. . . . Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.

*Khoja v. Orexigen Therapeautics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018).  Indeed, the cases

Defendants rely on confirm that judicial notice cannot be used to resolve factual disputes on a

motion to dismiss.  *See, e.g.*, *Smith v. Maloon*, No. 9-cv-954, 2010 WL 2761344, at *6 (S.D. Ohio

July 13, 2010) (stating that the court cannot take judicial notice of testimony concerning a disputed

fact); *Delozier v. Jacobs Engineering Group, Inc.*, No. 19-cv-451, 2021 WL 1538787, at *4 (M.D.

Tenn. Feb. 19, 2021) (same).

8.      Defendants do not hide their attempts to use the content of these exhibits to argue disputed facts and argue that Exhibits 2, 5, and 6 "contradict" the allegations in the Complaint. Mot. at 19.  Even if it were proper to consider extrinsic evidence, Defendants' exhibits do not contradict Sigma's allegations.  In particular, Defendants incorrectly label an Island employee's trial testimony as "uncontested" and cite that employee's personal views on whether Sigma's supplier information is a trade secret as evidence for that fact.  Mot. at 6, 19.  A Court will determine whether the information Defendants stole was a trade secret.  Defendants' views on that question are argument, contested, and simply not relevant.  Defendants also cite Exhibit 7, a trial transcript, to claim that Island's "unethical behavior" was an issue in the FCA Action.  Mot. at 6. That counsel referenced Island's bad acts in its closing argument does not make it an issue in the case.  Even if Island's conduct were at issue in the FCA Action—it was not—the law is clear that the transcript may not be considered at this stage.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that the district court erred when it "took judicial notice of disputed facts stated in public records," including a hearing transcript).  Defendants misconstrue their cited authorities—*Kreipke* and *Williams*—in an attempt to bolster their argument that the Court can take judicial notice of ***anything*** in the FCA Action to contradict the Complaint.  Mot. at 20.  The holding in *Kreipke* and *Williams* is limited to documents that are attached to the complaint, not all pleadings, argument, and evidence that were submitted and weighed by the fact-finder in the FCA Action.  *See Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532, 536 (6th Cir. 2012); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015).  The Court should disregard Exhibits 2, 5, 6, and 7 and all references to them in the Motion.

## II.    Sigma's Trade Secret Claims Are Not Barred By Res Judicata

### A.    The Trade Secrets Claim Was Not a Compulsory Counterclaim

9.      Defendants argue that Sigma was required to bring its trade secret claim as a compulsory counterclaim in the FCA Action because the trade secret claims are logically related to whether Sigma knowingly evaded an import duty.  That is not correct.  In deciding whether counterclaims are compulsory under the logical relationship test, the Sixth Circuit has held that a court must "determine whether the issues of law and fact raised by the claims are *largely the same* and whether *substantially the same evidence* would support or refute both claims."  *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015) (emphasis in original) (quoting *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991)).  "A partial overlap in issues of law and fact does not compel a finding that two claims are logically related."  *Id.*  (quotation omitted).  Here, the claims are not the same. To prove Island's False Claims Act ("**FCA**") claim that Sigma had knowingly imported welded outlets without paying duties (Mot. at 2), it had to establish (1) a false statement, (2) knowledge, (3) materiality, and (4) caused the government to forfeit moneys due.  *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017).  To prove its trade secret theft claims, Sigma will need to establish "(1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff."  *BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, No. 21-cv-481, 2022 WL 1449707, at *9, 11 (M.D. Tenn. May 9, 2022).  The elements, facts, time frame, and proof required in both actions are not the same.  There can be no reasonable dispute that the FCA Action had entirely different issues of law from this trade secrets claim.

10.     Moreover, any factual overlap between the two suits is minimal at best and the same evidence is not required to prove each of the claims at issue in the different actions.  The Sixth Circuits' decision in *Bauman* is instructive.  There, the Sixth Circuit held that an action to collect

the underlying debt was not a compulsory counterclaim in a Fair Debt Collection Practices Act ("**FDCPA**") suit because the two claims raised different issues of law, and "while there may be some overlap," the factual issues were not "largely the same." *Bauman*, 808 F.3d at 1102. For example, unlike a foreclosure action, a FDCPA claim "does not focus on the validity of the debt, but instead on the 'use of unfair methods to collect it.'" *Id.* (citations omitted). Similarly, here, that the underlying trade secret was utilized in the Complaint in the FCA Action ("**FCA Complaint**") does not mean that action is "largely the same" as an action for theft of that trade secret. In the FCA Action, Island was required to establish that Sigma knowingly made false statements that it did not owe antidumping duties. How Island came to know about the identity of Sigma's suppliers was simply not at issue. Likewise, this trade secrets action does not "turn[] on the identities of Sigma's Chinese suppliers and Defendants' ability to establish same" or whether Sigma made false statements. Mot. at 16. Rather, it turns on whether Island inappropriately obtained Sigma's confidential information. Sigma's brief mention of Island's unethical behavior at closing argument in the FCA Action does not come remotely close to establishing that the evidence was "largely the same" in both cases. Indeed, the assertion that "Sigma's entire Complaint is premised on essentially the same proof" as the FCA Complaint and that the two actions "require substantially the same evidence" (Mot. at 13-14) defies all logic. Because the issues of law and fact raised here are not the same and the same evidence would not support or refute both claims, Sigma's trade secrets claims were not required to be brought as a counterclaim in the FCA Action. *Bauman*, 808 F.3d at 1101.

### B. Counterclaims Were Barred By the District Court in the FCA Action

11. Moreover, Sigma could not have brought trade secret claims in the FCA Action. By the time Island revealed that it had misappropriated Sigma's trade secrets, the deadline to file counterclaims had already passed. "[T]he concept of collateral estoppel cannot apply when the

party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (citations omitted). In other words, even if Sigma's trade secrets claims were compulsory counterclaims—they were not—they are not barred by claim preclusion.

12.     Rule 13(a)(1) of the Federal Rules of Civil Procedure states that "[a] pleading must state as a counterclaim any claim that—***at the time of its service***—the pleader has against an opposing party." (emphasis added).  Accordingly, "[a] counterclaim acquired by defendant after answering the complaint will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim."  Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1411 (3d ed.). Rule 13(e) further states that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading."

13.     Sigma filed its answer to Island's FCA Complaint on September 17, 2019.  The final day to amend the pleadings in the FCA Action was November 30, 2019, months before discovery closed.  *See* RJN Ex. A.  Island did not produce the documents evidencing Defendants' theft (or disclose Sigma's secrets to its competitors) until February 4, 2020, ***after*** the deadline to amend the pleadings.  Mot. at 5; Compl. at ¶ 20.  Sigma could not have brought a trade secrets claim by November 2019, particularly because the disclosure to Sigma's competitors had not occurred at that time.  Although the FCA Complaint stated that Island had obtained information on Sigma's suppliers from a former Sigma employee, the Complaint did not disclose that Defendants had stolen Sigma's supplier list nor reveal who had provided the identity of its suppliers.  If Sigma were to bring a claim at that stage it would have been based on pure speculation

and, thus, not permitted.  Compl. ¶ 18; *see also* Mot. at 3 (quoting ¶ 60 of the FCA Complaint); Fed. R. Civ. P. 11.

14.     Moreover, the FCA Court was clear that it would enforce the deadline for filing counterclaims in an identical scenario.  Indeed, following a similar disclosure and investigation, Anvil International LLC (now doing business as ASC Engineered Solutions, LLC) ("**Anvil**"), sought leave to file a counterclaim in the FCA Action.  The FCA Court, however, refused to allow the counterclaim.  First, the court decided that Anvil's motion for leave to amend its answer was moot because Anvil and Island also filed a motion to dismiss Anvil on the same day.  RJN Ex. A at 2.  More importantly, the Court explicitly stated that "even if [it] were to entertain Anvil's motion on its merits, the Court would not find good cause to permit Anvil to amend its Answer to assert a counterclaim at this late stage in the litigation." *Id.*  This order was issued on March 21, 2020, 21 days after Mr. Paquette's February 28, 2020 deposition where Sigma confirmed Defendants' theft.  *Id.*; Compl. ¶ 22.

15.     Based upon the FCA Court's treatment of Anvil, it is clear that by the time Sigma learned of the misappropriation, the FCA Court would not have allowed Sigma to file a counterclaim under either Rule 13(a) or 13(e).  Defendants' assertion that "[b]ecause Sigma did not bring those claims in the FCA Action, it is precluded from doing so now," is an attempt to deny Sigma *any* right to ever assert its claims.  Mot. at 16.  "A party has not had the requisite full and fair opportunity if he or she was unable to present critical evidence in the initial proceeding." *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir. 1992) (declining to apply collateral estoppel where an expert was barred from testifying at trial).  Rule 13(a) expressly makes a counterclaim compulsory only when it existed at the time the pleading was served, and courts may allow later counterclaims at their discretion under Rule 13(e).  Wright & Miller, 18 Fed. Prac. &

Proc. Juris. § 4415 (3d ed.) (recognizing an exception to claim preclusion where "the plaintiff was not aware of the full extent of the injuries involved with the claim.").

### III.    Defendants Fall Short of Demonstrating a Failure to State a Claim

16.    Throughout their Rule 12(b)(6) argument, Defendants repeatedly make arguments on the merits about disputed facts.  These arguments are inappropriate on a motion to dismiss and should be disregarded.  Courts "cannot settle a factual dispute on a motion to dismiss, where [it] instead must take the complaint's well-pleaded allegations as true." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1041 (6th Cir. 2022) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).  Sigma's Complaint sufficiently pleads each element required to establish a claim for the misappropriation of its trade secrets under each statute, and Defendants' arguments are without merit.  *Severe Records*, 658 F.3d at 578.

### A.    Sigma's Supplier List Is a Trade Secret

17.    Defendants make two arguments that Sigma's supplier information is not a trade secret.  First, they argue that the trade secrets are obsolete, and second they argue that the trade secrets are generally known or readily ascertainable.  Both arguments raise issues of fact and cannot be considered on a motion to dismiss. *Universal Life Church*, 35 F.4th at 1041.  It is well-established, "the question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder after full presentation of evidence from each side.'" *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (quotations omitted).  In addition, Defendants rely heavily on proffered extrinsic evidence for disputed facts (*see* Section I, *supra*), but "a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee*, 250 F.3d at 689-90 (quoting Fed. R. Evid. 201(b)).

### 1. Sigma's Trade Secrets had Value at the Time of the Misappropriation and Disclosure

18.    Defendants first assert that because Sigma was not importing welded outlets at the time the FCA Complaint was unsealed, the supplier list is obsolete and not actionable. Obsolescence and a trade secret's value are clearly questions of fact, and should not be considered at this stage of the proceedings. *Dow Corning Corp. v. Jie Xiao*, 283 F.R.D. 353, 355, 361 (E.D. Mich. 2012). Moreover, Defendants ignore several allegations in the Complaint. And because the vast majority of their so-called "evidence" was improperly submitted and should be disregarded, Defendants are left only with their inadequate cursory arguments about Sigma's allegations in the Complaint. *See* Mot. at 19-20.

19.    A trade secret must have had value "at the time of the alleged misappropriation." *Yoe v. Crescent Sock Co.*, No. 15-cv-3, 2017 WL 11479993, at *4 (E.D. Tenn. Mar. 24, 2017) (ordering discovery to determine if the trade secrets had value when misappropriated); 1 Milgrim on Trade Secrets § 1.07A. The trade secret's value is not required to last any particular length of time. Restat. (Third) of Unfair Competition, § 39 cmt. d (citation omitted). The Complaint alleges that Defendants stole Sigma's trade secrets during the period from 2011-2016, while Sigma was importing welded outlets from the suppliers identified to Mr. Sanders. *See* Compl. ¶¶ 30-31; Mot. at 19 (asserting that Sigma imported welded outlets from 2010 to 2018).[1]

20.    Sigma also suffered significant harm as a result of Island's post-2018 disclosure. Defendants' argument that Sigma was not harmed because it stopped importing welded outlets in 2018 is based on the mistaken belief that welded outlets were the only product that Sigma imported from the suppliers in question. To the contrary, the Complaint repeatedly alleges that Sigma

---

[1] Although Sigma has evidence that Defendants stole its trade secrets in 2016, it also understands that Mr. Sanders was communicating with its employees as early as 2011 and believes that Defendants were stealing its information well before 2016. Discovery is needed to determine the true breadth of Defendants' theft.

utilizes these suppliers for more products than just welded outlets.  Compl. ¶¶ 33, 35.  For example,

Sigma alleges that "Sigma has spent years researching suppliers, who are able to reliably produce

good quality welded outlets ***and other products*** that Sigma purchases.  Sigma has also spent years

developing ***new products*** and relationships with its suppliers."  Compl. ¶ 33 (emphasis added).

Further, "one of Sigma's businesses is dedicated entirely to sourcing and procuring products from

overseas on behalf of customers."  Compl. ¶ 35.  Sigma will prove (at the proper time) that Island's

misappropriation and disclosure of Sigma's trade secrets significantly affected (and still affects)

not just its supply and sale of welded outlets, but also its other products, resulting in substantial

damages.

### 2.    Whether the Trade Secrets Were Known Is a Disputed Fact

21.    Defendants next raise a factual dispute as to whether and when Sigma's trade

secrets were publicly known, inappropriately citing the contents of Exhibits 2, 5, and 6 to prove

the truth of the matter asserted.  *Lee*, 250 F.3d at 689-90.  The Court should not consider such

disputes at this stage. *Universal Life Church Monastery Storehouse*, 35 F.4th at 1041.  Moreover,

"information will not necessarily be deprived of protection as a trade secret because parts of it are

publicly available.  A confidential compilation and organization of public information can amount

to a trade secret." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021); *see also Mike's Train*

*House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006) ("[I]t is widely accepted that a

trade secret can exist in a combination of characteristics each of which, by itself, is in the public

domain.") (citation omitted).  In sum, "it is the secrecy of the claimed trade secret as a whole that

is determinative. The fact that some or all of the components of the trade secret are well-known

does not preclude protection for a secret combination, compilation, or integration of the individual

elements."  Restat. (Third) of Unfair Competition, § 39 cmt. f.

12

22.     Even if the Court were to consider Defendants' proffered "evidence" and argument (and it should not), it falls short of proving its point. Sigma's manufacturer information was not publicly available. As a prime example, Defendants assert that Sigma's motion to dismiss in the FCA Action based on publicly available shipping records "contradicts" Sigma's allegation that its suppliers and their contact information are not commonly known, but the actual motion and the authority it relies on do not support Defendants' argument. Mot. at 19; *Id.* at Ex. 2. That motion was based on 19 C.F.R § 103.31(a), which allows certain shipping data to be published to members of the press, but does ***not*** allow supplier or manufacturer information to be published. Mot. at Ex. 2, at 7-9; 19 C.F.R § 103.31(a). Island even stipulated that shipping records were confidential when it signed on to the Protective Order in the FCA Action. RJN Ex. B at ¶ 2.3 ("Entry packages and import documents, other than data included in publicly-released ship manifest data or in summary statistical reports, are presumptively confidential, consistent with U.S. Customs and Border Protection's treatment of CBP information.") (citing 9 C.F.R. § 103). The names of Sigma's suppliers were not public until Island disclosed them.

23.     Further, Sigma explained how difficult it was to obtain these trade secrets in the first place, and that even Mr. Paquette did not have access to the list, further indicating that little (if even any) information could be found elsewhere. Compl. ¶¶ 34, 37; *see also Hamilton-Ryker Group, LLC v. Keymon*, No. W2008-00936, 2010 Tenn. App. LEXIS 55, at *41 (Tenn. Ct. App. Jan. 28, 2010) (finding that even if a person could have obtained individual pieces of information "by other means, the integration and aggregation of it may be deemed confidential or a trade secret."). Defendants' citation to *PrimeSource Building Product, Inc. v. Huttig Building Product, Inc.* proves Sigma's point. No. 16-cv-11390, 2017 WL 7795125, at *13 (N.D. Ill. Dec. 9, 2017). That decision was based on an evidentiary hearing, which has not taken place here, which included

13

the CEO's admission that the company did not consider its supplier lists to be a trade secret. *Id.*
To the extent Defendants continue to argue Sigma's supplier information was public knowledge,
it is clearly a factual issue that must be resolved on the merits after discovery. Defendants have
provided no reason to presume that all or part of Sigma's trade secrets were public. *Mallet & Co.*,
16 F.4th at 386. Sigma has more than adequately alleged that its trade secrets have continuing
value and are not commonly known. *See, e.g.*, Compl. ¶¶ 33-37.

**B.      Sigma Took Reasonable Measures to Protect its Trade Secrets**

**1.      Sigma Sufficiently Alleged that it Kept its Information Secret**

24.      Next, Defendants argue that the Complaint does not properly allege the measures
Sigma took to keep its information confidential. In support of their argument, Defendants cherry-
pick a handful of quotes from the Complaint and erroneously claim that Sigma did not "identify
even a single step" taken to protect its trade secrets. Again, "[w]hether the measures taken by a
trade secret owner are sufficient to satisfy the Act's reasonableness standard ordinarily is a
question of fact for the jury." *Learning Curve Toys*, 342 F.3d at 725. As the Complaint alleges
and Mr. Paquette testified, Sigma kept its supplier list secret ***even from its own employees***, and
Mr. Paquette himself was not allowed access to the list. Compl. ¶ 37. These allegations are
sufficient. For example, the court in *Trans-Radial Sols., LLC v. Burlington Med., LLC* held that
allegations that the plaintiff had "restricted access to its alleged trade secrets and that it only
disclosed such secrets to Defendants on a need-to-know basis" were "sufficient to the state the
existence of a trade secret at the pleading stage." No. 18-cv-656, 2019 U.S. Dist. LEXIS 131711,
at *47 (E.D. Va. Aug. 5, 2019). In that case, "[t]he fact that the Distribution Agreement did not
contain a confidentiality clause is not automatically disqualifying." *Id.* (citation omitted). Rather
the court found that whether the company's methods to protect its information were sufficient was
"[a] 'fact intensive question' to be decided later in the litigation." *Id.* Similarly, in *HTS, Inc. v.*

*Boley,* the Court found allegations that trade secrets including customer lists and contact information were protected where only a limited number of employees had access to the information sufficient to overcome a motion to dismiss.  954 F. Supp. 2d 927, 944 (D. Ariz. 2013).

25.    The cases Defendants rely on are inapposite.  In *Altman Stage Lighting, Inc., v. Julie Smith*, the complaint "merely allege[d] that engineers working on the Grow Light were informed by Defendant to not discuss the project with anyone inside or outside the company." No. 20-cv-2575, 2022 WL 374590, at *5 (S.D.N.Y. Feb. 8, 2022).  In *BNA Associates, LLC*, the price information claimed as a trade secret was disclosed to third parties without restriction.  2022 WL 1449707, at *4.  As pled in the Complaint, Sigma goes much further.  Compl. ¶ 37.

26.    Defendants ignore that Mr. Paquette's duty not to disclose Sigma's trade secrets is well-established under New Jersey law, applicable here because Mr. Paquette was a New Jersey resident who worked at Sigma's New Jersey headquarters.  Compl. ¶¶ 9, 19, 90.  "The employee's common law duty also precludes him from disclosing trade secrets or confidential information of his employer, even after his employment has ended."  *P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*, No. 4-cv-4554, 2007 U.S. Dist. LEXIS 15216, at *39-40 (D.N.J. Mar. 2, 2007) (citation omitted).  Similarly, "an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal," even without any agreement.  *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 300-01 (2001) (quotation omitted).  Mr. Paquette was a former employee (Compl. ¶ 19) and he thus had duty to maintain Sigma's trade secrets.

### 2. The Protective Order Does Not Allow Defendants to Disclose Sigma's Trade Secrets to its Competitors

27. In response to allegations that they produced Sigma's trade secrets to Sigma's competitors without the required designation agreed to in the FCA Action's Protective Order (Compl. ¶¶ 61-63), Defendants claim that (a) they were not required to protect confidential information under the Protective Order and (b) that Sigma was required to move for a second protective order in order to force Defendants to comply and protect Sigma's trade secrets. Mot. at 22-23. Defendants concede that Island produced "discovery which it deemed non-confidential and consequently did not designate as 'Confidential'" and produced "communications between Mr. Paquette and Mr. Sanders in which Mr. Paquette stated the identities of Sigma's Chinese suppliers of welded outlets." Mot. at 4-5. The "disclosure or use of a trade secret of another without express or implied consent" is a trade secret misappropriation. *See* 18 U.S.C. § 1839(5)(B) (listing the requirements for misappropriation). Sigma never consented to the theft or disclosure of its trade secrets. In fact, it stated twice in deposition and in a subsequent letter that Island had produced Sigma's confidential business information and requested, three times, that Island destroy the documents and reproduce them with confidentiality protections. Compl. ¶¶ 64-65. Island did not dispute the documents' confidentiality; it simply ignored Sigma entirely. Compl. ¶¶ 66-67.

28. The Stipulated Protective Order exists "to adequately protect information the parties are entitled to keep confidential," including "information regarding the manufacture, purchase, or sale of inputs and products." *See* RJN Ex. B at ¶¶ 1.1, 2.3. Specifically, the Protective Order requires that "Disclosure or Discovery Material that qualifies for protection under this Order ***must be clearly so designated before the material is disclosed or produced***." *Id.* at ¶ 5.2 (emphasis added). Island was required to designate confidential material. It did not.

29.     Faced with these allegations, Defendants attempt to shift the blame to Sigma by claiming that Sigma was required to move for a ***second*** protective order to force Island to comply with the first Protective Order.  Mot. at 23.  Defendants essentially claim that not doing so somehow erased Defendants' own misappropriation and disclosure, Sigma's repeated efforts to protect its confidential information, and Island's refusal to take any steps to protect Sigma's trade secrets from disclosure.  Nothing gives Defendants the right to disclose Sigma's trade secrets publicly and to Sigma's competitors, and certainly not Island's self-proclaimed belief that the information it stole from Sigma's former employee was not confidential.

### C.     Sigma Sufficiently Alleged that Defendants Intended to Injure Sigma

30.     Defendants next argue that under the DTSA, the misappropriating party must intend to or know that the offense will injure the trade secret's owner.  Mot. at 23-24.  The New Jersey and Tennessee Trade Secrets Acts do not contain any language resembling the DTSA's "intending or knowing that the offense will injury any owner of that trade secret" language.  *Compare* 18 U.S.C. § 1832(a) *with* Tenn. Code Ann. § 47-25-1701, *et seq. and* N.J. Stat. § 56:15-1, *et seq.* Despite asking for the Complaint to be dismissed in its entirety (Mot. at 24), Defendants' argument does not apply to Sigma's claims under the NJTSA and TUTSA.

31.     Although pleadings on intent or knowledge are subject to *Iqbal* and *Twombly*'s plausibility standard, "any attempt to require specificity in pleading a condition of the human mind would be unworkable . . . because of the difficulty inherent in ascertaining and describing another person's state of mind with any degree of exactitude prior to discovery."  Wright & Miller, Fed. Prac. & Proc. § 1301 (4th ed. 2008).  Despite that difficulty, the Complaint alleges that Defendants affirmatively solicited and obtained Sigma's trade secrets from a former employee to bring the FCA Action, which was "intended to cripple Sigma's business so that Island could gain a competitive advantage."  Compl. ¶¶ 6, 21, 30, 46, 49.  Defendants' intent is plainly established by

17

their actions. Reaching out to a ***former*** employee instead of to Sigma, Defendants' customer, for this information also indicates that Defendants knew Sigma did not consent to the disclosure. Compl. ¶¶ 38-39.

32.     Defendants argue that these allegations are irrelevant because they were "justified" in misappropriating Sigma's trade secrets. Mot. at 24. But, of course, the outcome of the FCA Action, which is currently on appeal, does not retroactively entitle Defendants to violate any and all laws to bringing the case. Defendants, tellingly, cite no authority to support such a meritless argument. As the Ninth Circuit stated when allowing trade secrets and other counterclaims against FCA relators, "some mechanism must be permitted to insure that relators do not engage in wrongful conduct in order to create the circumstances for qui tam suits." *United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993). Defendants offer no basis to ignore that the FCA Action was brought by Island to harm its competitors.

33.     In addition, Defendants disregard all other allegations of intent beyond bringing the FCA Action. Mot. at 24. The Complaint demonstrated Defendants' knowledge and intent that Sigma would be harmed outside of that Action. Sigma and Island are direct competitors, and Island was one of Sigma's suppliers of welded outlets and competed with Sigma's other suppliers for Sigma's business. Compl. ¶¶ 26-27. In approximately 2011-2012, for example, Defendants obtained information from Mr. Paquette on a supplier it competed with for Sigma's business, thereby "damaging Sigma's position and unfairly enhancing Island's ability to compete." Compl. ¶ 30. Defendants also cannot credibly claim that the Complaint does not plausibly allege knowing or intentional injury when Sigma repeatedly informed Island that Island had disclosed Sigma's confidential information, and Island did not take a single step to remedy the situation. Compl. ¶¶ 7, 23, 49, 61-67. Sigma has more than met the plausibility requirement (*Iqbal*, 556 U.S. at 678),

18

particularly as there is no "rigid rule requiring the detailed pleading of a condition of mind." *See* Wright & Miller, Fed. Prac. & Proc., § 1301.

> **D.    Sigma Clearly Identified Remedies to Which it Is Entitled**

34.    The three trade secrets statutes that are the basis for the Complaint broadly allow damages for actual loss and unjust enrichment.  18 U.S.C. § 1836(3)(B); N.J. Stat. § 56:15-4(a); Tenn. Code Ann. § 47-25-1704(a).  The Complaint alleges that Sigma was damaged by (1) losing the economic benefit of its information's secrecy, (2) its competitors' (including Defendants) gain from avoiding development costs and enhanced ability to compete, (3) Defendants' unjust enrichment from the FCA Action, (4) the lack of a reasonable royalty payment, (5) Defendants' ability to unfairly compete as Sigma's competitor and supplier, and (6) interference with Sigma's relationships with its suppliers and customers.  Compl. ¶¶ 70-75.  Sigma's complaint fully identifies the remedies to which it is entitled and the facts supporting those remedies.

> **1.    The Loss of Secrecy and Benefit to its Competitors Harmed Sigma**

35.    "By statutory definition, trade secret misappropriation *is* harm."  *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021) (emphasis in original) (citations omitted).  "The trade secret's economic value depreciates or is eliminated altogether upon its loss of secrecy when a competitor obtains and uses that information without the owner's consent. Thus, cognizable harm is pled when a plaintiff adequately alleges the existence of a trade secret and its misappropriation." *Id*. at 913-14.  Here, the disclosure of Sigma's trade secrets to Defendants and its other competitors "destroy[ed] the value of that information."  Compl. ¶ 49.

36.    A competitor, including Defendants, would also get numerous benefits from Sigma's trade secret information, including knowledge of reliable, high-quality suppliers that could not otherwise be discovered without extensive research and cost.  Compl. ¶ 34, 70.  Such avoided development costs "are recoverable as damages for unjust enrichment under the DTSA

and its state law counterparts." *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
No. 15-cv-211, 2021 U.S. Dist. LEXIS 75875, at *23 (S.D.N.Y. Apr. 20, 2021) (collecting cases).
Thus, "Sigma's knowledge of reliable, quality suppliers is a competitive advantage and Sigma
derives economic benefit from this knowledge not being generally known or readily ascertainable
to its competitors." Compl. ¶ 71. Further, "nothing prevents Island or the other defendants in the
FCA Action who received the confidential information from using or disclosing Sigma's trade
secrets," and some of the secrets Island disclosed remain in the public domain. Compl. ¶ 68. There
is a cost "'[w]hen someone steals a trade secret and discloses it to a competitor . . . . After all, what
value does a trade secret hold when it's no longer a secret from the trade?'" *Oakwood*, 999 F.3d
at 913 (quoting *StorageCraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1185 (10th Cir. 2014)).

37.     Defendants also repeatedly obtained Sigma's trade secrets at a time when
Defendants were *competing* with Sigma's other suppliers, deriving an economic benefit. Compl.
¶¶ 30-32, 74-75. Defendants contend that Sigma must plead precisely how Defendants used the
trade secrets (Mot. at 27), but the law is clear "a plaintiff 'need not make out specific allegations
as to exactly how Defendants used or disclosed Plaintiff's trade secrets.'" *Austar Int'l, Ltd. v.
Austarpharma LLC*, 425 F. Supp. 3d 336, 356 (D.N.J. 2019); *see also Oakwood*, 999 F.3d at 909
n.18 ("There are no technical limitations on the nature of the conduct that constitutes 'use' of a
trade secret. . . . As a general matter, any exploitation of the trade secret that is likely to result in
injury to the trade secret owner or enrichment to the defendant is a 'use.'") (quoting *Penalty Kick
Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003)). Even beyond the FCA
Action, the Complaint alleges numerous harms, and the law gives Sigma access to remedies.

38.     As explained above (*see* Section III(B)(2)), Defendants cannot claim that they
needed a second court order to understand that they are not entitled to freely share a competitor's

trade secrets. *See* 18 U.S.C. § 1839(5)(B). "[I]n the context of disclosure of confidential information in violation of a Rule 26(c) protective order, the damage is done upon the act of disclosure, and '[p]arties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril.'" *Koch v. Greenberg*, No. 7-cv-9600, 2011 U.S. Dist. LEXIS 114811, at *34-35 (S.D.N.Y. Aug. 16, 2011) (quoting *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991)). And by the time of the jury trial, Defendants had caused Sigma's trade secrets (with respect to the welded outlet product and other product imported from those same suppliers) to be disclosed for well over a year. "A trade secret once lost is, of course, lost forever." *FMC Corp. v. Taiwan Tainan Giant Industrial Co.*, 730 F.2d 61, 63 (2d Cir. 1984). Defendants' attempts to now manufacture blame that Sigma is somehow responsible for their disclosure of Sigma's trade secrets to avoid liability for their own actions is without merit.

### 2. Defendants Were Unjustly Enriched By the FCA Action

39. Defendants do not and cannot argue that Sigma was not significantly harmed by the FCA Action. They only contest Sigma's entitlement to damages. First, Defendants are incorrect as a matter of law when they assert that unjust enrichment is only measured by profits. Mot. at 25. As the same case Defendants cited stated, "the lack of actual profits does not insulate the defendants from being obliged to pay for what they have wrongfully obtained." *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F.Supp.2d 182, 185 (S.D.N.Y. 2002) (quotation omitted). To the contrary, "[t]he fact that a misappropriator made little or no profit from its wrongdoing does not preclude or limit an unjust enrichment award where another measure of unjust enrichment, such as cost savings from the misappropriation, is available." 4 Milgrim on Trade Secrets § 15.02[c]. *Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985), also does not support Defendants because that decision held only that "in cases of this sort, damages encompass profits unjustly

21

earned by the defendant," not that unjust enrichment was *exclusively* based on profits. Defendants' overly-narrow definition of unjust enrichment damages is unsupported.

40.     Finally, Defendants erroneously assume that by virtue of being an FCA relator they are entitled to violate any laws they please without consequence in the course of bringing an FCA complaint and effectively immune from ever owing damages due to their own conduct. Such an argument is meritless. Nowhere does the FCA suggest that relators can misappropriate trade secrets, nor do Defendants cite any supporting authority. 31 U.S.C. § 3729, *et seq.* Nor does any provision of the FCA bar recovering civilly from a relator who acted unlawfully when preparing the suit. *Id.* Finally, there is no merit to the suggestion that allowing unjust enrichment damages would "re-decide the FCA Action," particularly where there was no trade secrets counterclaim in the FCA Action for the jury to even decide. Mot. at 16, 26. Island's "behavior" (Mot. at 26) and misappropriation of trade secrets was not on trial in the FCA Action. And, again, Exhibit 7 should be disregarded. *Lee*, 250 F.3d at 689-90. Nothing in the FCA Action deprived Sigma of its rights and remedies to its trade secrets claim under the law.

## IV.     Defendants Are Not Immune From Trade Secrets Liability

41.     Defendants further attempt to evade liability through the trade secrets immunity provision in 18 U.S.C. § 1833. Mot. at 29. However, by its plain language the immunity provided by the statute does not apply to Defendants' conduct. The DTSA provides, in a limited set of circumstances, immunity from liability under both federal and state law following the confidential disclosure of trade secrets. 18 U.S.C. § 1833; *see also Hamilton v. Juul Labs, Inc.*, No. 20-cv-3710, 2020 WL 5500377, at *8 (N.D. Cal. Sept. 11, 2020) (recognizing that section 1833 is a narrow exception for disclosing trade secrets). Specifically, section 1833 permits the disclosure of a trade secret to the government or "in a complaint or other document filed in a lawsuit or other proceeding, if such filing was made under seal." 18 U.S.C. § 1833(b)(1)(B). The DTSA does not

provide immunity for "an act that is otherwise prohibited by law, ***such as the unlawful access of material by unauthorized means***." 18 U.S.C. § 1833(b)(5) (emphasis added); *see also* H.R. Rep. No. 114-529 at 16 ("The Committee stresses that this provision immunizes the act of disclosure in the limited circumstances set forth in the provision itself; it does not immunizes [sic] acts that are otherwise prohibited by law."). Moreover, the immunity provided by the DTSA is an affirmative defense, and entitlement to this immunity must be established by the Defendants. *Ramirez Cap. Servs., LLC v. McMahan*, No. 21-cv-241, 2021 WL 5907791, at * 4 (E.D. Tex. Dec. 14, 2021). Defendants have not met their burden, as the statute is plainly not applicable.

42.     Per its plain meaning, the immunity provided by 18 U.S.C. §1833(b)(1)(B) is not applicable here. On January 30, 2019, the FCA Complaint was unsealed after the U.S. Department of Justice declined to pursue litigation against Sigma. RJN Ex. C. Prior to unsealing the FCA Complaint, the Court asked Island if it objected to that action. If Island wanted to claim immunity, it could have requested that the Court keep the pleading under seal or redact the names of Sigma's suppliers. It did not. *Id.* The DTSA only allows immunity where the filing is confidential and under seal. *See* S. Rep. No. 114-220 at 5 (noting that the Congressional intent of Section 1833 is to provide limited protection for the "***confidential*** disclosure of a trade secret in a lawsuit") (emphasis added). Perhaps recognizing that the facts are fatal to their argument, Defendants make the erroneous assertion that "[t]he fact that the complaint was later unsealed is irrelevant given that subsection (B) only requires that the complaint be *filed* under seal." Mot. at 31 (emphasis original). Defendants fail to cite any authority to support their skewed interpretation of section 1833(b)(1)(B). Such an argument, if true, would undermine the purpose of section 1833(b)(1)(B) and allow a party to freely disclose trade secrets on a public docket so long as it preliminarily filed them under seal. Defendants' interpretation would render the sealing requirement meaningless.

More importantly, Island did not only disclose Sigma's trade secrets in its complaint, ***it directly and independently sent them to each of Sigma's competitors in discovery***. Compl. ¶ 62.

43.     Defendants additionally claim that various policy considerations give relators the ability to misappropriate trade secrets in the course of their investigation. Mot. at 29. What Defendants fail to mention is that the FCA does in fact contain specific protection for "any employee, contractor, or agent." 31 U.S.C. § 3730(h). Moreover, section 1833 of the DTSA expressly does not apply to a party who committed "unlawful access of material by unauthorized means." 18 U.S.C. § 1833(b)(5). Put simply, Congress did not protect, and did not intend to protect, defendants who stole trade secrets and then publicly disclosed them as part of their lawsuit. *See* H.R. Rep. No. 114-529 at 3 (noting that "[t]rade secrets are an integral part of a company's competitive advantage in today's economy . . . [and are] highly susceptible to theft").

44.     Defendants attempt to characterize this suit as a claim for indemnification (Mot. at 30), but Defendants' arguments run counter to their own cited authority expressly allowing independent counterclaims. *See, e.g.*, *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1210 (9th Cir. 2009) (stating that an FCA defendant "may advance independent claims without regard to an eventual finding of liability under the FCA."). Indeed, *Madden* makes clear that trade secrets claims are independent from those dependent on FCA claims. *See Madden*, 4 F.3d at 831 ("[c]ounterclaims for independent damages are distinguishable, however, because they are not dependent on a qui tam defendant's liability"). And, of course, immunity cannot apply to a party who discloses trade secrets to competitors. Compl. ¶¶ 61-67. The plain statutory language clearly does not apply to a company stealing a competitor's trade secrets to gain an improper advantage.

## V.     Defendants Are Not Entitled to Attorneys' Fees

45.     Finally, Defendants offer no support for their cursory claim that they are entitled to attorneys' fees. Mot. at 31-32. In the Sixth Circuit, to obtain attorneys' fees for a bad faith claim

under 18 U.S.C. § 1836(b)(3)(D), a party "must prove that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 U.S. App. LEXIS 2319, at *41 (6th Cir. Jan. 24, 2022) (quotation omitted).

46.     It is clear from the Complaint that Sigma's claims are well-pled and based on ample evidence of Defendants' misappropriation and disclosure of its trade secrets, including but not limited to deposition testimony and communications between Mr. Sanders and Mr. Paquette that evidence the theft of Sigma's trade secrets. *See, e.g.*, Compl. ¶¶ 20-23, 30-32, 46. As demonstrated above, Sigma's claims are not barred and its allegations are more than sufficient. Sigma has every right to seek damages and an injunction to remedy the misappropriations it has suffered. And Defendants' assertions that this case attempts to re-litigate the FCA Action (which is on appeal) is without merit. This Complaint concerns Defendants' misappropriation and disclosure of Sigma's trade secrets before and during the FCA Action. The only relationship between the merits or outcome of the FCA Action and this case concerns the harm to Sigma and the amount of damages. Defendants' unfounded claims about Sigma's motives are merely an attempt to prejudice Sigma.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss.

## ORAL ARGUMENT REQUEST

The U.S. District Court for the Western District of Tennessee (the "**District Court**") has set Sigma's *Motion to Withdraw the Reference* (the "**Withdrawal Motion**") and the opposition thereto filed by Island for a hearing on August 23, 2022. Sigma requests oral argument on the Motion; however, it notes that as the District Court has set a hearing on the Withdrawal Motion, Sigma respectfully requests that the oral argument on the Motion be set for hearing after the District Court's ruling on the Withdrawal Motion.

Dated:  July 28, 2022

Respectfully Submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C**


By:  _/s/ E. Franklin Childress, Jr._
E. Franklin Childress, Jr. (TN Bar # 7040)
R. Spencer Clift, III (TN Bar # 020445)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Email: fchildress@bakerdonelson.com
Email: sclift@bakerdonelson.com

—and—

Roberto J. Kampfner (pro hac vice pending)
Aaron Colodny (pro hac vice pending)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329
rkampfner@whitecase.com
aaron.colodny@whitecase.com

_Counsel for Sigma Corporation_


## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2022, a copy of the foregoing electronically filed Opposition was served on the parties who are registered CM/ECF participants who have consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

_/s/    E. Franklin Childress, Jr._