IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SIGMA CORPORATION, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:22-cv-02436-JPM-cgc |
| | ) |
| ISLAND INDUSTRIES, INC. and | ) |
| R. GLENN SANDERS, | ) |
| | ) |
|    Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants' Refiled Motion to Dismiss (ECF Nos. 33, 33-1), filed in this Court on November 11, 2022. Plaintiff filed a Refiled Response in Opposition in this Court on November 17, 2022. (ECF No. 34-1.) On November 11, 2022, Defendants filed a Reply to Plaintiffs' Response in Opposition in this Court. (ECF No. 33-2.) For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**. Defendants' request for attorneys' fees is **DENIED**.

**I.     BACKGROUND**

   *A. Factual Background*

Defendant Island Industries ("Island") is a Tennessee corporation with its home office in Memphis, Tennessee. (ECF No. 33-1 ¶ 1.) Defendant R. Glen Sanders ("Sanders") is the president, CEO, and principal owner of Island, and is a resident of Memphis, Tennessee. (Id. ¶ 2.) Plaintiff Sigma Corporation ("Sigma") is a New Jersey corporation. (Id. ¶ 3.) Island and Sigma are competitors who import and manufacture, among other products, welded outlets. (Id. ¶ 8.)

1

On June 13, 2017, Island filed a complaint against Sigma in the U.S. District Court for the Central District of California, alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"). (Id. ¶ 6.) That action was unsealed after the U.S. Department of Justice declined to intervene on January 30, 2019, and Island thereafter filed an amended complaint and pursued the FCA action. (Id. ¶¶ 6–7; see also United States v. Vandewater Int'l Inc., No. 2:17-CV-04393-RGK-KS, 2019 WL 6917927 (C.D. Cal. Sept. 3, 2019) (hereinafter the "California Case").)

The amended complaint in the California Case alleged that a former Sigma employee had informed Island of Sigma's suppliers. (Id. ¶ 8.) The identity of that employee was disclosed to Sigma in the course of discovery in the California Case. (Id. ¶ 13.)

Island and Sigma entered into a Stipulated Protective Order in the California Case. (Id. ¶ 11.) Island subsequently produced documents to Sigma in discovery that detailed Sigma's suppliers of imported welded outlets, and those documents were later entered as trial exhibits in the California Case. (Id. ¶¶ 14, 17.) Sigma neither moved for these documents to be marked confidential nor for the documents to be sealed. (Id. ¶¶ 16–17.)

A jury trial in the California Case took place in October of 2021. (Id. ¶ 20.) The jury found in favor of Island, and awarded the company damages against Sigma in the amount of $24,256,638.09, plus civil monetary penalties of $1,824,145, and additional attorneys' fees. (Id. ¶ 24.) Sigma appealed that judgment, and the appeal is currently pending. (Id.)

B.  *Procedural Background*

On February 2, 2022, Island filed a voluntary petition under Chapter 11, Subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee. See U.S. Bankruptcy Court for the Western District of Tennessee, Case No. 22−20380.

On May 9, 2022, Sigma filed a Complaint initiating an adversary proceeding in Bankruptcy

2

Court.  (ECF No. 37-1.)  Defendants filed the instant Motion to Dismiss in bankruptcy court on June 27, 2022.  (ECF No. 33-1.)  Plaintiff filed a Response in Opposition on July 28, 2022.  (ECF No. 34-1.)  Defendants filed a Reply to Plaintiff's Response in Opposition on September 29, 2022.  (ECF No. 33-2.)

Sigma filed a Motion to Withdraw the Reference in Bankruptcy Court on May 9, 2022.  (ECF No. 1.)  This Court entered an Order withdrawing the reference on October 19, 2022.  (ECF No. 23.)

On November 9, the Court entered an Order Requiring Parties to Refile, requesting that the Parties refile all motions pending before the Bankruptcy Court, along with their accompanying memoranda, in this Court.  (ECF No. 30.)  Defendants refiled the instant Motion, all accompanying materials, and a Reply on November 11, 2022.  (ECF No. 33.)  Plaintiff refiled its Reply in Opposition on November 17, 2022.  (ECF No. 34.)  On December 13, 2022, the Court entered an Order Requiring Parties to Refile the Complaint.  (ECF No. 36.)  Plaintiff refiled the Complaint in this Court on December 18, 2022.  (ECF No. 37.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations.  Twombly, 550 U.S. at 570.  A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery."  Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012).  A court "need not accept as true legal conclusions or unwarranted factual inferences."  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

While consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508

F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36; see also Garton v. Crouch, 2022 WL 275519 (M.D. Tenn. 2022) (citing Brent v. Wayne Cyt. Dep't of Human Servs., 901 F.3d 656, 694 (6th Cir. 2018)) ("[I]t has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, 'so long as they are referred to in the Complaint and are central to the claims contained therein.'").

In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." Northville Downs v. Granholm, 622 F.3d 579 (6th Cir. 2010) (citing Commercial Money Ctr., Inc., 508 F.3d 327, 335–36 (6th Cir. 2007)). Courts may "take judicial notice of developments in related proceedings in other courts of record." Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 n.2 (6th Cir. 2021); Walburn v. Lockheed Martin Corp., 431 F.3d 966, 972 n.5 (6th Cir. 2005); Delozier v. Jacobs Engineering Group, Inc., 2021 WL 1538787. Federal courts may also take judicial notice of "the content of court records." Fed. R. Evid. 201(b)(2).

Courts should not take judicial notice of documents contained in an earlier proceeding for the truth of matters subject to reasonable dispute. Stafford v. Jewelers Mut. Ins., 554 Fed. App'x. 360, 369 (6th Cir. 2014). The use of documents filed in other proceedings "is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." Passa v. City of Columbus, 123 Fed. App'x 694, 697 (6th Cir. 2005) (citations omitted). The transcript of a prior hearing "may be considered for determining the fact that the hearing occurred, that certain

5

issues were considered," and for determining the disposition of the prior motion. Tutstone v. Garner, No. 1:12CV2963, 2014 WL 991947, at *1 (N.D. Ohio Mar. 13, 2014).

**III. ANALYSIS**

*A. Use of Documents Outside of the Pleadings*

Defendant requests "that the Court take judicial notice only of what the U.S. District Court for the Central District of California itself stated, which is beyond dispute." (ECF No. 34-1 ¶ 6.) The Court is not required to limit its examination to such a narrow category of documents "without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36. However, in ruling on the instant Motion, the Court has only considered the disposition of the California Case, as well as the existence of documents which allegedly contained trade secrets and were subject to discovery in that case and the non-existence of an assertion of a protective order in that case. The Court does not take notice of the contents of any document filed in an earlier proceeding for the truth of any matter in dispute. See Stafford, 554 Fed. App'x at 369.

*B. Plaintiff's Indemnification Claims are Barred*

The Parties' California Case was a *qui tam* action brought under the FCA. (ECF No. 37 ¶ 6; ECF No. 33-1 ¶ 6.) Plaintiff alleges that it is entitled to damages because that action was "intended to cripple Sigma's business so that Island could gain a competitive advantage." (ECF No. 37-1 ¶ 6.) Plaintiff also lists the full amount of the judgment against it as damages in the instant action. (Id. ¶ 8.) To the extent that Plaintiff alleges that its damages constitute the California Case's judgment against it, Plaintiff cannot prevail in the instant action.

The Ninth Circuit has conducted a review of the purposes of the FCA in determining whether a *qui tam* defendant may pursue indemnification through counterclaims. The Ninth

Circuit determined that, in crafting the FCA, "the framers of the Act recognized that wrongdoers might be rewarded under the Act, acknowledging the *qui tam* provisions are based upon the idea of 'setting a rogue to catch a rogue.'" Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev., 934 F.2d 209, 213 (9th Cir. 1991). "The FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a *qui tam* plaintiff with unclean hands." Id. (punctuation omitted). Therefore "Congress did not intend to create a right of action for contribution or indemnification under the FCA." Id. If Plaintiff had attempted to bring a counterclaim against Defendant in the California Case to recover the entire judgment against it, that counterclaim would have been barred.

Plaintiff's instant action is an impermissible end-run around this bar to indemnification under the FCA, which is the law in the Ninth Circuit and has been endorsed widely by district courts including courts in the Sixth Circuit. "[H]aving been found liable under the FCA, the Company may not now bring any claim against any party seeking to offset their FCA liability including any state law claims that, if prevailed on, would end in the same result." The Heart Doctors, P.S.C. v. Layne, No. 6:05-636, 2006 WL 2692694 (E.D. Ky. Sept. 13, 2006) (finding that where the defendant in an FCA action attempted to recover the proceeds of a successful *qui tam* action from the plaintiff in a later action alleging breach of contract, that indemnification was barred by the policy considerations of the FCA). "[A] *qui tam* defendant . . . cannot pursue claims that have the effect of contribution or indemnification of the FCA claims, as this would undermine the intended framework of the FCA[, which aims] to encourage relators to disclose fraudulent activity and punish wrongdoers." Chattanooga-Hamilton Cnty. Hosp. Auth. v. Xerox Corp., No. 1:16-CV-496, 2017 WL 2637745, at *8 (E.D. Tenn. June 19, 2017). "FCA defendants should not be able to seek the equivalent of indemnification, even when they wrap their claim in the garb of

7

another cause of action." United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 505 F. Supp. 2d 20, 28–29 (D.D.C. 2007).

Plaintiff does not state a facially plausible claim for indemnification. Iqbal, 556 U.S. at 678. For this reason, the remainder of this opinion only addresses damages which could be considered independent, those that allegedly "allowed Defendants to unfairly compete" and "interfere with Sigma's ongoing and future relationships with suppliers and customers." (ECF No. 37-1 at PageID 797; see also U.S. ex rel. Madden v. Gen. Dynamics Corp., 4 F.3d 827, 831 (9th Cir. 1993) (holding that "*qui tam* defendants can bring counterclaims for independent damages.").)

### C. Plaintiff's Claims are Not Barred by Res Judicata

The Defendants argue that Plaintiff's claims are barred by res judicata. (ECF No. 33-1 at PageID 128.) They argue that the cause of action for trade secret misappropriation was a compulsory counterclaim in the California Case. (Id. at PageID 129.) Defendants contend that "such a claim necessarily existed" at the onset of the California Case. (ECF No. 33-2 at PageID 707.) They further argue that Plaintiff's claims are barred because it failed to seek leave to amend to assert those counterclaims. (Id. at PageID 708.) Defendants maintain that their complaint in the Ninth Circuit action, which set out that it had obtained the information that formed the basis of the FCA claim from Plaintiff's former employee, "put Sigma on notice" of a potential misappropriation of trade secrets counterclaim. (Id.)

Plaintiff's claims are not barred by res judicata. "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party." Fed. R. Civ. P. 13(a)(1). "The party asserting the defense of res judicata . . . bears the burden of proof." Butler v. FCA US, LLC, 119 F. Supp. 3d 699, 703 (E.D. Mich. 2015) (citing Keymarket of Ohio, LLC v. Keller, 483 F. App'x. 967, 971 (6th Cir. 2012)).

8

"[E]ven under the doctrine of res judicata, a party need not pursue a claim against an opposing party if it is not mature at the time that its pleading is served." In re Dayton Title Agency, Inc., 527 B.R. 289, 296 (Bankr. S.D. Ohio 2015). "The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997). While Plaintiff may have been given leave to amend its complaint in the California Case to assert a counterclaim alleging the theft of trade secrets had it sought to do so, that is not relevant. "For the purposes of res judicata, the scope of litigation is framed by the complaint at the time it is filed." Computer Assocs. Int'l, Inc., 126 F.3d at 369–70 (citing Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist., 750 F.2d 731, 739 (9th Cir. 1984)) (quotation marks and alterations omitted).

Plaintiff adequately sets out in the Complaint that it only discovered the identity of the employee who conducted the alleged trade secret misappropriation during the discovery phase of the California Case. (ECF No. 37-1 at PageID 788.) Viewing the facts in the light most favorable to the Plaintiff, it is possible that its trade secrets claims were not ripe at the time Plaintiff was served in the California Case.

*D. Plaintiff's Complaint Fails to State a Claim for Misappropriation of Trade Secrets*

Plaintiff's Complaint alleges that Defendant misappropriated trade secrets in violation of three statutes: (1) the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); (2) the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. § 56:15-1, *et seq.*; and (3) the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701, *et seq.* (ECF No. 37-1 ¶¶ 76–109.) According to Plaintiff, this misappropriation took multiple forms. Plaintiff alleges that it was harmed by Defendants' acquisition of its list of suppliers, along with other unspecified information "on the development of welded outlets," from a now-former employee between 2011

9

and 2016.  (ECF No. 37 ¶¶ 30–31.)  Plaintiff also alleges that Defendants "produced documents containing" trade secrets in the course of discovery in the California Case and "ignored Sigma's repeated requests to mark the documents "confidential.""  (Id. ¶ 23.)

Because the statutory schemes of the NJTSA and DTSA are "substantially similar as a whole," courts often consolidate the analyses of the two schemes.  Oakwood Labs, LLC v. Thanoo, 999 F.3d 892, 905 n.11 (3d Cir. 2021).  Likewise, the elements of a TUTSA claim are "largely the same" as the elements of a DTSA claim.  BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., L.P., No. 3:21-CV-00481, 2022 WL 1449707, at *4 (M.D. Tenn. May 9, 2022) (citing Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC, No. 3:19-CV-00966, 2019 WL 5964531, at *5 (M.D. Tenn. Nov. 13, 2019)).  The Court will therefore analyze these claims together.  "[T]he elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff."  Id. (citing PartyLite Gifts, Inc. v. Swiss Colony Occasions, No. 3:06-CV-170, 2006 WL 2370338, *3 (E.D. Tenn. Aug. 15, 2006)).  For information to qualify as a trade secret, the plaintiff must have "taken reasonable measures to keep [the] information secret." 18 U.S.C. § 1839(3)(A); see also Tenn. Code Ann. § 47-25-1702(4)(B); N.J. Stat. § 56:15-2.

Plaintiff argues that it is not proper to determine whether reasonable steps were taken to protect a trade secret at the motion to dismiss stage.  (ECF No. 34-1 ¶ 24.)  "While it may be true that courts often do not resolve this issue at the pleadings stage, this does not mean it is improper to do so in certain circumstances—or that it is never done."  Gov't Emps. Ins. Co. v. Nealey, 262 F. Supp. 3d 153, 167 (E.D. Pa. 2017) (citing Raben Tire Co. v. McFarland, 5:16–CV–141, 2017 WL 741569, at *2 (W.D. Ky. Feb. 24, 2017) (deciding whether a plaintiff had taken reasonable measures to protect its trade secrets at the motion to dismiss stage)).

10

*1. Plaintiff Failed to Take Reasonable Measures to Protect its Trade Secrets*

Plaintiff has not sufficiently alleged in the Complaint that it took "reasonable measures to keep [this] information secret." 18 U.S.C. § 1839(3)(A). Plaintiff makes conclusory statements in its Complaint that it kept its supplier list a secret. (See ECF No. 37-1 ¶¶ 29, 81, 94.) Plaintiff also argues that its employee's fiduciary "duty not to disclose Sigma's trade secrets" under New Jersey law served as a measure to keep the supplier list secret. (ECF No. 34-1 ¶ 26.)

The fact that information was filed publicly, as opposed to having been filed under seal, may indicate that a party did not take reasonable measures to protect its trade secrets. Gov't Emps. Ins. Co., 262 F. Supp. 3d at 168.

> All [Plaintiff] had to do was follow the Protective Order's terms to designate the [document] as "confidential." [Plaintiff] never did this. [Plaintiff]'s failure to follow the terms of the Protective Order in any way at all cannot be construed as anything other than a clear signal to [Defendants] that [Plaintiff] did not intend for the [document] to be confidential.

Id. at 168–69. Plaintiff alleges that it made repeated requests to Defendants to mark certain documents confidential in the California Case, to no avail, and that Defendants' failure to do so violated that action's Stipulated Protective Order. (ECF No. 37-1 ¶¶ 62–66.) Plaintiff had recourse in the California Case to assert a protective order violation, including seeking sanctions against the Defendants. Fed. R. Civ. P. 37(b)(2). Violation of a protective order is such a serious abuse that a Court may terminate a case for such violation even when it is unintentional. Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc., 144 F.R.D. 379, 383 (C.D. Cal. 1992) (citing Marrocco v. General Motors Corp., 966 F.2d 220, 224–25 (7th Cir. 1992)). Filing a motion to have documents marked confidential or sealed would have been the appropriate recourse in a discovery dispute, and would have shown that Plaintiff took steps to protect its supplier list. Fed. R. Civ. P. 26(c)(1). That Plaintiff did not even file a motion in the California Case is an indication that it failed to take basic reasonable measures to protect its trade secrets. Gov't Emps. Ins. Co., 262 F. Supp. 3d at 168.

Plaintiff's novel argument that its former employee's fiduciary duty not to transmit trade secrets constituted a reasonable measure to protect its trade secrets is also unavailing. Courts have found that even the existence of a confidentiality agreement, standing alone, may be insufficient to show that a party has taken a measure to protect a trade secret. See Zabit v. Brandometry, LLC, 2021 WL 1987007 (S.D.N.Y. May 18, 2021). If a company has a trade secret it wishes to protect to preserve its value, mere reliance on a duty of loyalty from its employees is far from "reasonable." A reasonable company would do more to protect a supposedly valuable asset. See, e.g., Farmers Edge Inc. v. Farmobile, LLC, 970 F.3d 1027, 1033 (8th Cir. 2020) (holding that, under the DTSA, a company "without a confidentiality agreement and without other policies or practices for safeguarding secrets" had not taken reasonable steps to protect its trade secrets).

Plaintiff does not point to a single measure it took to protect its allegedly secret supplier list in its Complaint, and there are indications that it failed to take reasonable measures to protect this trade secret. Viewing the Complaint in the light most favorable to the Plaintiff, it has failed to make out a cognizable claim. Brown, 440 F. Supp. 2d at 872.

Defendant's Motion to Dismiss is therefore **GRANTED**.

*E. The Court will Decline to Award Attorney's Fees*

Defendants argue that they are entitled to reasonable attorney's fees. A party is entitled to reasonable attorney's fees when the "claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Aday v. Westfield Ins. Co., 486 F. Supp. 3d 1153, 1171 (S.D. Ohio 2020), aff'd in part, rev'd in part, No. 21-3115, 2022 WL 203327 (6th Cir. Jan. 24, 2022) (quoting Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997)); see also 18 U.S.C. § 1836(b)(3)(D). In other words, the Court may award attorney's fees to Defendants "if the claim

was brought in bad faith." B&P Littleford, LLC v. Prescott Mach., LLC, No. 20-1449, 2021 WL 3732313, *5 (6th Cir. Aug. 24, 2021).  Defendants argue that "Sigma and its counsel were aware when they filed the Complaint in this matter that their claims were without merit," and also argue that Sigma is litigating "merely to force Island to spend its resources."  (ECF No. 33-2 at PageID 710–11.)

The Court finds that Plaintiff's behavior does not rise to the level of bad faith.  This is not a case in which there was "no direct evidence" that information, which was a colorable secret, passed between litigating parties, for instance.  Degussa Admixtures, Inc. v. Burnett, 277 F. App'x 530, 534 (6th Cir. 2008) (applying the "bad faith" standard in the context of a trade secrets claim under Michigan law and a substantively similar statute).  Even if the supplier list was not legally a trade secret, there is no evidence that Defendants "voluntarily took measures to protect it" once they received it and there is no "intentionally muddled timeline" set out in the Complaint.  Magnesium Mach., LLC v. Terves, LLC, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021).  While Plaintiff's claim does not have merit, it is not so devoid of support that the Court will find that it was a "bad faith" claim.

Defendants' request for attorneys' fees is **DENIED**.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Defendants' request for attorneys' fees is **DENIED**.

**SO ORDERED**, this 28th day of February, 2023.

   /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE